UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ISACC R.,[1]

                Plaintiff,

v.                                              3:20-CV-1172 (ATB)

KILOLO KIJAKAZI,

                Defendant.

JUSTIN M. GOLDSTEIN, ESQ., for Plaintiff
JAMES J. NAGELBERG, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

**MEMORANDUM-DECISION AND ORDER**

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

**I.    PROCEDURAL HISTORY**

On January 31, 2018, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he became disabled on April 1, 2013. (Administrative Transcript ("T") 78, 79, 177–201). Plaintiff's applications were denied initially on April 13, 2018. (T. 78, 79, 98–112). Plaintiff requested a hearing, which was held by video conference on

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

August 2, 2019 before Administrative Law Judge ("ALJ") Kenneth Theurer. (T. 27–49). At the hearing, plaintiff's representative amended the alleged disability onset date to January 31, 2018. (T. 30). Plaintiff and Vocational Expert ("VE") Joseph Atkinson also testified at the hearing. (*Id.*). ALJ Theurer issued an unfavorable decision on August 26, 2019 (T. 7–21), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 30, 2020 (T. 1–6).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was 34 years old on the date of the administrative hearing. He lived in a house with his wife and three young children. (T. 31–32).

After graduating high school, plaintiff entered the Air Force as an aircraft armament specialist. He was "booted" two weeks before transfer to his first duty station for misconduct. (T. 32–33). He testified that his discharge was eventually modified to "honorable." (T. 33). Plaintiff also had a history of working for a food

packaging business, and in a work-study program for Disney. (T. 33–35). Plaintiff was most recently employed with National Pipe & Plastic ("NPP"), a manufacturer of PVC pipes. (T. 34). There, plaintiff worked as a line runner, a forklift operator, and loader in the delivery yard. (T. 35–37). He "could lift 250 [pounds] before [his] back started going." (T. 35). Plaintiff was fired from this position after he accidently ran over a coworker with a forklift, who died as a result. (T. 35, 37). Plaintiff testified that he never went back to work after the forklift accident, because his "mental state wasn't right." (T. 38). He became "more agitated, especially around people." (*Id.*).

Plaintiff did not like being outside or around people. He believed this precluded him from working any job. (T. 38, 41). He had difficulty shopping in crowded stores, and became "belligerent and edgy." (*Id.*). At one point during his employment with NPP, he threatened to throw his foreman into the grinder for being disrespectful. (T. 39). Plaintiff took a variety of medications for his mental health conditions. (T. 39–40). He drank alcohol and occasionally smoked marijuana to help with his anxiety. (T. 40). Although plaintiff had a remote history of an overdose and suicide attempt, he testified that he had not had any thoughts of suicide since his daughters were born. (T. 42). Plaintiff took care of his children during the day while his wife was at work, with the assistance of his father and his father's girlfriend. (T. 40–41).

There is a substantial amount of medical evidence in the administrative record, and plaintiff has provided a summary of the medical evidence in his brief. Rather than reciting the evidence at the outset, I will discuss the relevant material in my analysis of plaintiff's claims.

5

## IV. THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 31, 2018, the alleged onset date. (T. 12). At step two, the ALJ found that plaintiff had the following severe impairments: schizoaffective disorder; anxiety; depression; and Post-Traumatic Stress Disorder. (T. 13) The ALJ found that plaintiff's hypertension and prior knee injury were not severe. (*Id.*). While the ALJ recognized reports from the record that plaintiff sometimes experienced lower back pain, he found this condition did not reach the threshold of a medically determinable impairment in the absence of a confirmed diagnosis by an acceptable medical source related to these symptoms. (*Id.*)

At step three of the sequential evaluation, the ALJ found that the severity of plaintiff's impairments did not meet or equal the severity of a listed impairment. (T. 14–15). At step four, the ALJ found that plaintiff had the residual functional capacity to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: the [plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. He can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks – i.e., he can ask for help when needed, handle conflicts with others; state his own point of view; initiate or sustain a conversation and understand and respond to physical, verbal and emotional social cues; but, he should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals. The [plaintiff] should have no more than occasional contact with coworkers and supervisors, and should have no more than incidental contact with the public. He

    can handle reasonable levels of simple, work-related stress in that
    he can make simple decisions directly related to the completion
    of his tasks in a stable, unchanging work environment.[2]

(T. 15–16).

Next, the ALJ determined that plaintiff was unable to perform any past relevant work. However, the ALJ evaluated the VE's testimony and found that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (T. 19–20). Thus, the ALJ found that plaintiff was not disabled from January 31, 2018 through the date of his decision. (T. 21).

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1. The ALJ improperly determined that plaintiff's back disorder was neither a medically determinable impairment, nor a severe impairment. (Plaintiff's Brief ("Pl.'s Br.") at 11–12) (Dkt. No. 16).

2. The ALJ improperly assessed the medical opinions of record. (Pl.'s Br. 13–19, 20–23).

3. The ALJ failed to develop the record as to plaintiff's mental health treatment notes. (Pl.'s Br. at 19–20).

4. The ALJ substituted his own lay opinion for that of an acceptable medical source by equating plaintiff's activities of daily living with an ability to perform full-time work. (T. 23–25).

5. The ALJ failed to consider the impact of plaintiff's mental limitations, as set forth in the RFC determination, on plaintiff's ability to endure full-time

---

  [2]The ALJ defined incidental as "more than never and less than occasional; simply put, the job should not involve direct interaction with the public, but the person does not need to be isolated away from the public." (T. 16).

7

employment during the probationary training period.

Defendant argues that the Commissioner's decision is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4–24) (Dkt. No. 21). For the following reasons, this court finds that the ALJ's step two determination was not supported by substantial evidence, and remand is therefore warranted.

## VI. MEDICALLY DETERMINABLE IMPAIRMENT

### A. Legal Standards

In order to be found disabled, a claimant must show that he is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§ 404.1505(a), 416.905(a). "Consequently, only impairments that are 'medically determinable impairments' can be considered in the disability analysis." *Flower v. Comm'r of Soc. Sec.*, No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018).

In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques.[3] Therefore,

---

[3] Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests. 20 C.F.R. §§ 404.1502(c), 416.902(c).

a physical or mental impairment must be established by objective medical evidence[4] from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; §§ 404.1529, 416.929; *Woodard v. Berryhill*, No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018) (internal quotation marks, citations and brackets omitted). Furthermore, the evidence must "show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b). The existence of a medically determinable impairment is not established by a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]" *Id*. A claimant bears the burden of establishing that he or she has a medically determinable impairment. *Woodard v. Berryhill,* 2018 WL 3536084, at *4.

### B.     Application

Plaintiff argues that the ALJ improperly determined that plaintiff's back pain was neither a medically determinable impairment, nor a severe impairment. Plaintiff further contends that the ALJ's failure to appropriately qualify plaintiff's back pain at step two prejudiced plaintiff later in the sequential analysis, to the extent plaintiff's physical limitations were not considered in the RFC determination.

At step two, the ALJ found the following:

> The record include[s] reports from the [plaintiff] that he sometimes experiences lower back pain. However, no acceptable medical source has confirmed a diagnosis related to these

---

[4]Objective medical evidence means signs, laboratory findings, or both. Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1502(f–g), 416.902(f–g).

> symptoms. The [plaintiff] has frequently denied experiencing pain when presenting for treatment [ ]. In the absence of substantiating evidence during the period at issue, subjective complaints cannot establish a medically determinable impairment, no matter how intensely expressed. Due to a lack of objective medical evidence, the [plaintiff's] lower back pain does not reach the threshold of a medically determinable impairment.

(T.13).

Although this court stops short of concluding as a matter of law that plaintiff's back pain was, in fact, a medically determinable impairment, the ALJ's reasoning with respect to plaintiff's back pain at step two was not the result of proper application of the correct legal principles, nor supported by substantial evidence. At the outset, the record reflects that plaintiff did have a confirmed diagnosis from an acceptable medical source relative to his symptoms. Plaintiff sought treatment for back pain with his primary care provider, NP Scott Rosman. Pursuant to the new regulations which apply to disability applications such as plaintiff's, which were filed after March 27, 2017, a nurse practitioner is classified as an acceptable medical source. 20 C.F.R. §§ 416.902(a)(7), 404.1502(a)(7).

Although the evidence suggests that plaintiff may have historically treated for episodes of back pain with NP Rosman, the first time plaintiff complained of back pain in the record before this court is reflected in a February 6, 2018 treatment note. (T. 578). At that time, NP Rosman assessed plaintiff to have "chronic bilateral low back pain without sciatica," and recommended conservative treatment for the same. (T. 583). When plaintiff returned the following month with continuing complaints of back pain, NP Rosman prescribed muscle relaxers and offered physical therapy, which the

plaintiff declined. (T. 769, 774). NP Rosman also recommended that plaintiff avoid heavy lifting. (T. 774). Plaintiff complained of continuing back pain in October 2018 (T. 797), and on December 17, 2018, plaintiff indicated that his back pain was sharp and aggravated by lifting heavy objects and doing dishes. (T. 804). He also reported that muscle relaxers weren't helping. (*Id.*). NP Rosman once again noted plaintiff's diagnosis of "chronic low back pain," with continued recommendations for conservative treatment. (T. 808). Plaintiff returned to NP Rosman with ongoing complaints of back pain on March 19, 2019. (T. 811).

Moreover, the record contains a December 13, 2017 medical opinion from NP Rosman, wherein he specifically identifies "chronic back pain" as one of plaintiff's physical health diagnoses. (T. 576). In the opinion, NP Rosman assessed that plaintiff was significantly limited in his ability to walk, stand, bend, lift, and carry, as a result of his diagnoses. (*Id.*). The ALJ addressed NP Rosman's opinion at step two, finding that it was not persuasive for, among other reasons, having been rendered "well before the period at issue." (T. 14). This is nonsensical – NP Rosman's opinion was prepared a little over one month before plaintiff's alleged onset date. If anything, the fact that NP Rosman identified plaintiff's diagnosis of chronic back pain at the outset of plaintiff's period of alleged disability, during which he continued to seek treatment for the same condition, only substantiates to this court that the duration requirement relative to plaintiff's back pain was met. In any event, the ALJ's representation that the record is devoid of a diagnosis from an acceptable medical source relative to plaintiff's back pain is without merit, and does not constitute substantial evidence for the ALJ's step two

11

determination.

The ALJ also concluded that the record was devoid of any objective, substantiating evidence relative to plaintiff's back pain during the period at issue. (T. 13). Admittedly, NP Rosman's treatment records did not include any in depth physical examinations, and the record is devoid of relevant medical imaging studies. However, the two medical opinions which the ALJ found to be "persuasive accounts of the [plaintiff's physical] functioning" contradict the ALJ's step two determination, and the ALJ's failure to reconcile these medical experts' findings with his treatment of their opinions constituted further error.

At step two, the ALJ first recognized the "persuasive" opinion of consultative examiner Gilbert Jenouri, M.D. (T. 13). Upon physical examination, Dr. Jenouri found that plaintiff had a normal gait, walked on his heels with difficulty, and had a normal stance. (T. 731). Plaintiff did not require assistance getting on and off the examination table. (*Id.*). However, during the same examination Dr. Jenouri found that plaintiff exhibited a limited range of motion in his lumbar spine, and positive straight leg raises while supine. (T. 732). Dr. Jenouri diagnosed plaintiff with, among other things, "occasional low back pain," and assessed him to have "mild restriction walking and standing long periods, bending, stair climbing, lifting and carrying." (*Id.*). The ALJ did not discuss why Dr. Jenouri's examination findings did not constitute objective evidence that plaintiff's back pain was medically determinable, other than noting that the consultative examiner's findings were "mild." (T. 13). However, this conclusion is at odds with the governing legal standard for analyzing claims at step two. *See Patrick*

12

*J. v. Comm'r of Soc. Sec.,* No. 5:17-CV-1377 (ATB), 2019 WL 917963, at *4 (N.D.N.Y. Feb. 22, 2019) ("[T]he step two analysis 'may do no more than screen out de minimis claims.' ") (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)); *Matthew P. v. Comm'r of Soc. Sec*., No. 3:20-CV-01586 (TWD), 2021 WL 5629070, at *6–7 (N.D.N.Y. Dec. 1, 2021) (acknowledging plaintiff's de minimis burden at step two of the sequential evaluation process, and finding that the ALJ's failure to acknowledge relevant evidence, or to explain its implicit rejection, is plain error).

      The ALJ also found the opinion of state agency consultant Annamalai Periakaruppan, M.D., to be a more persuasive account of plaintiff's physical functioning than that of NP Rosman.  Upon review of the medical evidence, Dr. Periakaruppan acknowledged plaintiff's treatment for complaints of back pain, as well as Dr. Jenouri's findings upon physical examination.  (T. 69).  Dr. Periakaruppan went on to identify "sprains and strains - all types" as one of plaintiff's medically determinable impairments.  (T. 70).  She rated it as "non-severe."  (*Id.*).  Although a reasonable interpretation of this evidence would lead to the conclusion that Dr. Periakaruppan's reference to sprains and strains included plaintiff's back pain, the ALJ ignored this opinion and merely cited the state agency consultant's determination that there were no severe physical impairments as support for his step two determination.  (T. 13).  He did not discuss whether Dr. Periakaruppan's opinion supported a finding that plaintiff's back pain was a medically determinable impairment, and why he did not adopt Dr. Periakaruppan's opinion despite the purported persuasiveness he attributed to it.  This was error, as the ALJ must consider evidence holistically and may not cherry-

13

pick from the record. *See Sena v. Berryhill*, No. 3:17-CV-912, 2018 WL 3854771, at *9 (D. Conn. Aug. 14, 2018) ("It is well-settled that an ALJ may not 'cherry-pick' evidence by 'improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.' ") (citation omitted).

An error at step two may be harmless if the ALJ identified other severe impairments, proceeded through the remainder of the sequential evaluation, and specifically considered all severe and non-severe impairments during subsequent steps of the process. S*ee Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013). However, the ALJ's error in this case stemmed not from a step-two severity conclusion, but from the conclusion that plaintiff's back pain was not a medically determinable impairment. "[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable." *Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019). "Th[e] distinction [between an ALJ's determination that an impairment is not severe and her determination that an impairment is not medically determinable] is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (where ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error analysis did not apply and remand was warranted). *See* SSR 12-2P, 2012 WL 3104869 *5 (July 25, 2012) ("*Once a[medically determinable impairment] is established*, we

then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." (emphasis added)); *see also Lauren A. v. Saul*, No. 8:18-CV-0244 (TWD), 2019 WL 4242248, at *7 (N.D.N.Y. Sept. 6, 2019) (ALJ's failure to find impairment medically determinable was not harmless and warranted remand); *Childs v. Colvin*, No. 1:14-CV-462, 2016 WL 1127801, at *3–4 (W.D.N.Y. Mar. 23, 2016) (ALJ's failure to find claimant's schizoaffective disorder was a medically determinable impairment "constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Showers v. Colvin*, No. 3:13-CV-1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) ("Since [the ALJ] found that Showers's claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent steps or when formulating Showers's residual functional capacity.").

Here, the ALJ's deficient step two analysis impacted the subsequent steps of the disability determination process because once the ALJ found that plaintiff's back pain was not medically determinable, he was not required to consider it in determining plaintiff's RFC. *See Penny Lou S.*, 2019 WL 5078603, at *8 (error in finding condition was not medically determinable impairment "impact[s] the subsequent steps of the disability determination process because, once the ALJ [finds] the impairment to be not medically determinable, he [is] not required to consider it in determining Plaintiff's RFC"). Indeed, there is no indication that the ALJ considered any of plaintiff's alleged

15

physical impairments beyond step two of the sequential analysis. (T. 15–19). This is especially concerning, to the extent the ALJ concluded plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. (T. 15).

The Commissioner provides several rationalizations to support his contention that plaintiff failed to meet his burden at step two; essentially engaging in the analysis missing from the ALJ's opinion. (Def.'s Br. at 6–10). Notwithstanding, these considerations were not made at the agency level, and a reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action." *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Moreover, some of the Commissioner's arguments are unavailing. For example, the Commissioner dismisses the notion that plaintiff's back pain could constitute a medically determinable impairment, pointing to case law from this district recognizing that "[p]ain is a symptom, not an impairment." (Def.'s Br. at 6, citing *Newton v. Comm'r of Soc. Sec.*, No. 5:14-CV-904 (TJM/ATB), 2015 WL 5117768, at *8 (N.D.N.Y. Aug. 31, 2015)). However, this observation was made in the context of noting that Newton's "complaint's of knee pain, *without more*," did not justify a finding of severity at step two. *Newton*, 2015 WL 5117768 at *8 (emphasis added). A searching review reveals that ALJs operating within this Circuit have frequently identified "back pain," or the like, as a medically determinable impairment under the appropriate circumstances. *See, e.g., Rowe v. Comm'r of Soc. Sec.,* No. 5:14-CV-67 (TJM/ATB), 2015 WL 1419063, at *4 (N.D.N.Y. Mar. 27, 2015) (ALJ determined that

plaintiff's back pain was a medically determinable impairment); *Brenda H. v. Comm'r of Soc. Sec.*, No. 20-CV-01025, 2022 WL 125820, at *2 (W.D.N.Y. Jan. 13, 2022) (same); *Guarini v. Astrue*, No. 3:11-CV-01609, 2013 WL 1087631, at *2 (D. Conn. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 1087629 (D. Conn. Mar. 14, 2013) (same); *Pitcher v. Barnhart*, No. 5:06-CV-1395 (LEK/VEB), 2009 WL 890671, at *19 (N.D.N.Y. Mar. 30, 2009) ("back impairment with pain"); *Lucas v. Astrue*, No. 506-CV-1100 (LEK/VEB), 2009 WL 3334345, at *3 (N.D.N.Y. Oct. 14, 2009) ("chronic intermittent low back pain").  Accordingly, this was not a sufficient basis to summarily exclude plaintiff's back pain as a medically determinable impairment.

The Commissioner also points out that plaintiff did not identify a low back disorder when he applied for disability benefits.  (Def.'s Br. at 8).  However, the regulations clearly provide that the fact "[t]hat plaintiff did not specifically allege [an impairment] in [his] initial benefits applications is not dispositive ... [and the] rule requires an ALJ to investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist . . . [,] without regard to whether the claimant has alleged that particular impairment as a basis for disability." *Keller v. Colvin*, No. 16-CV-6399, 2017 WL 4112024, at *13 (W.D.N.Y. Sept. 18, 2017) (quoting *Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998)); *see* 20 C.F.R. § 404.1512(a)) ("We will consider only impairment(s) you say you have *or about which we receive evidence*.") (emphasis added).  Thus, the omission of plaintiff's back pain from his initial disability application is not, in itself, a sufficient basis to

17

conclude that it did not constitute a medically determinable impairment.

In sum, remand is warranted in this matter because the ALJ's conclusion at step two was not supported by substantial evidence. As set forth above, the court finds that the reasons provided by the ALJ at step two with respect to plaintiff's back pain were arbitrary, and do not withstand scrutiny. The court does not address the plaintiff's remaining arguments "because, after evaluating the medical and diagnostic evidence and applying the de minimus standard," the ALJ may come to an alternative conclusion at step two, and consequently incorporate his findings into the remaining steps in the evaluation process. *Burgos v. Berryhill*, No. 3:16-CV-1764, 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018) (remanding matter where ALJ failed to address, and reconcile, evidence of record suggesting that plaintiff's back pain constituted a medically determinable impairment).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: February 2, 2022

_Andrew T. Baxter_
Andrew T. Baxter
U.S. Magistrate Judge